# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| MICHELLE A. DAVIS, | : | Civil No. 1:12-CV-2332 |
| --- | --- | --- |
| Plaintiff | : | (Judge Conner) |
| v. | : | (Magistrate Judge Carlson) |
| GEICO GENERAL INSURANCE COMPANY, and GOVERNMENT EMPLOYEES INSURANCE COMPANY, | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

The above-captioned action is an insurance dispute over the defendant insurer's handling of the plaintiff's claim for underinsured motorist benefits for injuries sustained during an automobile accident in Altoona, Pennsylvania in 2009. The action comes before this Court on the basis of diversity of citizenship of the parties, as the amount in controversy exceeds $75,000, the plaintiff is a citizen of Pennsylvania and the defendants have their primary place of business in Maryland and Washington, D.C.

Defendants Geico General Insurance Company and Government Employees Insurance Company ("GEICO") have moved to dismiss Count II of the complaint, in

which the plaintiff brings a claim for bad faith pursuant to 42 Pa. Cons. Stat. Ann. § 8371. GEICO maintains that choice-of-law principles should compel this Court to conclude that the State of Delaware has a greater interest than the Commonwealth of Pennsylvania in seeing its laws enforced with respect to the pending insurance dispute between the parties. Noting that Delaware has no statutory cause of action for bad faith, GEICO insists that Delaware has the greatest interest in having its common law applied to the plaintiff's bad-faith claim, apparently because at the time of the accident, the injured motorist, and the plaintiff in this lawsuit, was a citizen of Delaware. Accordingly, GEICO argues that the plaintiff's claim for bad faith under Pennsylvania law should be dismissed, and that any bad faith claim should be limited to a claim under Delaware common law.

Ironically, the defendants make this argument, notwithstanding the fact that Delaware has no other meaningful connection to the events of this case, or the parties, and notwithstanding the fact that application of Delaware laws would potentially result in a diminished recovery for the only person in this lawsuit with any identified connection to the State of Delaware. GEICO also argues that Delaware has the predominant interest in this lawsuit, notwithstanding that the accident that forms the predicate for this lawsuit occurred in Altoona, Pennsylvania; that the plaintiff's claims for bad faith arose during negotiations that took place after the plaintiff moved

2

to Pennsylvania; that the plaintiff's vehicles are presently garaged and registered in Pennsylvania; and that the bad-faith claim arises out of negotiations that were commenced in Pennsylvania through a Pennsylvania lawyer negotiating with a claims adjuster located in Virginia.

Because we believe that the undisputed facts of this case should cause the Court to find that the Commonwealth of Pennsylvania has the greater interest in seeing that its laws are applied to this insurance dispute involving one of its own citizens, and relating to an accident that occurred within the Commonwealth, we recommend that the Court deny GEICO's motion to dismiss on choice-of-law grounds.

## II. **BACKGROUND**

The above-captioned action arises out of an automobile collision that occurred during the evening of June 13, 2009, in Altoona, Pennsylvania. While the plaintiff, Michelle Davis, was stopped at a traffic light, her vehicle was struck from behind by a vehicle driven by Dolores Verbonitz, a Pennsylvania resident. Ms. Davis sustained a number of serious injuries as a result of the collision.

The plaintiff settled her claim against the tortfeasor, who was insured by Erie Insurance Company; however, the tortfeasor's insurance coverage was allegedly insufficient to compensate the plaintiff adequately for the injuries she suffered.

3

At the time of the accident, the plaintiff was a resident of Delaware and was insured by GEICO. As part of her automobile policy, the plaintiff specifically elected to pay GEICO additional premiums in order to retain underinsured motorist (UIM) benefits. Sometime following the accident, but before she made a claim against GEICO under the policy, the plaintiff moved to the Commonwealth of Pennsylvania, where she is now domiciled.

The plaintiff first put GEICO on notice of her potential UIM claim in November, 2011, after she had moved to Pennsylvania. Thereafter, negotiations about the UIM dispute took place between the plaintiff's counsel, a Pennsylvania lawyer, and GEICO's adjuster, who was located in Fredericksburg, Virginia. Also following the accident, the plaintiff represents that she underwent rotator cuff surgery for injuries sustained as a result of the automobile accident, which was performed by an orthopedic specialist located in Altoona, Pennsylvania.

The plaintiff initiated this action on August 15, 2012, by filing a complaint for UIM benefits, and asserting a claim for bad faith under 42 Pa. Cons. Stat. Ann. § 8371. At the time she filed the complaint, and at all times through the filing of this report, the plaintiff was a resident of Alexandria, Pennsylvania.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957) ). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. Id. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 555).

## IV. DISCUSSION

The defendants argue that the Court should conclude that Delaware law applies to the bad-faith claim asserted in this case. On the basis of this argument, the defendants move to dismiss the plaintiff's bad-faith claim on the grounds that Pennsylvania law is inapplicable to this case, and because Delaware law does not provide for a statutory cause of action for bad faith. It appears that the defendants are, in effect, attempting to foreclose the plaintiff from recovering attorney's fees as part of her bad-faith claim, and to make it more difficult for her to recover punitive damages.

### A. Conflicts-of-Law Analysis Under Pennsylvania Law

Under Pennsylvania law, an insured that carries its burden of proof on a bad-faith claim against an insurer may recover interest, court costs, attorney's fees, and punitive damages. See 42 Pa. Cons. Stat. Ann. § 8371. In contrast, Delaware does not provide a statutory cause of action for bad faith; instead, an insurer who fails to investigate a claim or delays payment to an insured "is in breach of the implied obligations of good faith and fair dealing underlying all contractual obligations." Tackett v. State Farm Fire & Cas. Ins. Co., 653 A.2d 254, 264 (Del. 1995). If a plaintiff bringing a bad-faith claim under Delaware law carries her burden of proof, she may recover general contract remedies, E.I. DuPont de Nemours & Co. v.

Pressman, 679 A.2d 436, 446 (Del. 1996), but generally may not recover attorney's fees, Cassion v. Nationwide Ins. Co., 455 A.2d 361, 370 (Del. Super. Ct. 1982).

Given this dissonance in the way in which Pennsylvania and Delaware treat bad-faith insurance claims, the parties agree that there is a conflict of laws that must be resolved in determining which state's law should apply to the plaintiff's claims in this case. The parties' briefs are, however, somewhat cursory in their review of the applicable law in this field, and we thus pause to summarize legal guidelines that govern this choice-of-law conflict.

In diversity cases, federal courts follow the conflict-of-laws rules of the State in which the court sits. Klaxon v. Stentor, 313 U.S. 487, 496 (1941); Maniscalco v. Brother Intern. (USA) Corp., 709 F.3d 202, 206 (3d Cir. 2013). Pennsylvania applies a "flexible, 'interests/contacts/ methodology to contract choice-of-law questions." Pacific Employers Ins. Co. v. Global Reinsurance Corp. of America, 693 F.3d 417, 432 (3d Cir. 2012) (quoting Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226-27 (3d Cir. 2007).

Prior to Griffith v. United Airlines, Inc., 203 A.2d 796 (Pa. 1964), Pennsylvania choice-of-law rules were the laws of *lex loci contractus* (place of contract) and *lex loci delicti* (place of injury). Hammersmith, 480 F.3d at 227. In Griffith, the Pennsylvania Supreme Court abandoned a strict *lex loci delicti* rule in

7

tort cases, and adopted instead a "more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." Griffith, 203 A.2d at 805-06. In Hammersmith, the Third Circuit explained that the flexible rule announced in Griffith combines the "approaches of both [the] Restatement II (contacts establishing significant relationships) and 'interests analysis' (qualitative appraisal of the relevant states' policies with respect to the controversy).'" 480 F.3d at 231 (quoting Melville v. Am. Home Assurance Co., 584 F.2d 1306, 1311 (3d Cir. 1978)); see also Berg Chilling Systems, Inc. v. Hull Corp., 435 F.3d 455, 463 (3d Cir. 2006).

Notably, Griffith, which concerned a tort action, abandoned the *lex loci delicti* rule, but the Pennsylvania Supreme Court has yet to apply the Griffith standard to a contract action. Hammersmith, 480 F.3d at 228 (citing Budtel Assocs., LP v. Cont'l Cas. Co., 915 A.3d 640 (Pa. Super. Ct. 2005)); see also Reinert v. Nationwide Ins. Co., Civ. A. No. 12-1094, 2013 WL 1311097, at *3 (E.D. Pa. Apr. 2, 2013). However, although it is not clear whether the *lex loci contractus* rule is still considered Pennsylvania law, Hammersmith, 480 F.3d at 227, the majority of state and federal courts have applied the Griffith standard to contract actions, id. at 227-28 (collecting cases); see also Reinert, 2013 WL 1311097, at 3 (collecting cases). Based on these cases, the Third Circuit has instructed that "it is now clear that Pennsylvania

8

applies the more flexible 'interests/contacts' methodology to contract choice-of-law questions." Hammersmith, 480 F.3d at 226-27.

Under Pennsylvania's choice-of-law rules, a court must initially determine whether there is an actual conflict between the competing States' laws. Id. at 231. To make this determination, the court must analyze the substance of the potentially applicable laws to identify "whether these states would actually treat this issue any differently." Id. at 230. If the application of the competing laws would not lead to different outcomes, no conflict exists, and the court need only apply the forum State's law. Id. However, where the competing laws would lead to different results, the court must then characterize the type of conflict involved. Id. In order to do this, the court must engage in an "interest analysis" of the policies of the interested states, "and then characterize the relationship between the policies and the factual predicate of the action as a true conflict, a false conflict, or an 'unprovided for situation." Reinert, 2009 WL 1311097, at *3 (citing Hammersmith, 480 F.3d at 230).

Accordingly, in cases like this one, where there are relevant differences between the laws of two different States, "the court should examine the governmental policies underlying each law, and classify the conflict as a 'true,' false,' or an 'unprovided-for' situation." Hammersmith, 480 F.3d at 230. A "deeper [choice of law] analysis' is necessary only if *both* jurisdictions' interests would be impaired by

the application of the other's laws (i.e., there is a true conflict)." Id. (quoting Cipolla v. Shaposka, 267 A.2d 854, 856 (Pa. 1970) (original emphasis) (electing to "undertake a deeper analysis" because the plaintiff "is a resident of Pennsylvania which has adopted a plaintiff-protecting rule" and the defendant "is a resident of Delaware which has adopted a defendant-protecting rule").

In this case the parties agree, as do we, that there is an "actual" conflict between the laws of Pennsylvania and Delaware with respect to bad-faith claims, since Pennsylvania provides a statutory remedy that allows for the recovery of attorney's fees for a plaintiff bringing such claims, and Delaware does not provide a statutory remedy, but instead allows only for the recovery of contract remedies available under common law.

The parties also appear to suggest that this actual conflict of laws presents a "true" conflict, meaning that both jurisdictions' interests would be impaired by the application of the other's laws. However, we believe that the conflict in this case actually is not a "true" conflict, but is instead a "false" conflict, a conflict which is more apparent than real. We reach this view because we find the only jurisdiction with any interest in seeing its laws enforced in this case is the Commonwealth of Pennsylvania.

## B. False Conflict

The defendants' argument that a "true" conflict exists in this case is cursory, conclusory, and ultimately unpersuasive. GEICO asserts, with no citation or compelling argument, that "[e]ach state has a governmental interest in the application of its bad faith laws." (Doc. 14, at 4.) If this were true, however, there would never be a need for courts to determine whether an actual conflict between the laws of different states rose to the level of a "true" conflict, since according to the defendants' reasoning every state would have an interest in seeing that its own laws are enforced in any case in which they might conceivably be implicated. But that is not the appropriate test to be applied in determining the quality of the conflict of laws presented, as we must instead consider what actual interests Delaware and Pennsylvania may have in seeing their laws applied to this particular dispute.

With respect to this relevant inquiry, GEICO has not identified any particular interest that Delaware could conceivably have in having its common law applied in this case, which would – according to the parties – have the effect only of precluding the plaintiff from recovering attorney's fees if she prevails, and making it more difficult for her to be awarded punitive damages. GEICO has not pointed to any policy statement, case law, or legislation that could cause this Court to conclude that

Delaware would be interested in seeing a former citizen's damages remedies curtailed in this way.

Moreover, the defendant has not persuasively explained why Delaware would deem it in the State's interest to have its common law applied to this dispute in order to safeguard the interests of a non-Delaware insurance company. Upon consideration, we cannot perceive why Delaware's interests are sufficiently implicated in a dispute involving two non-Delaware parties, where only one party had an evident relationship with Delaware, where that party would have its interests harmed by the application of Delaware law, and where all of the relevant actions giving rise to this claim relate to Pennsylvania. We thus do not agree with the parties that a "true" conflict exists in this case, and instead find that the conflict between the laws of Pennsylvania and Delaware with respect to bad-faith insurance claims presents a "false" conflict under the particular facts of this case, where the plaintiff is a former Delaware resident who is now a citizen of Pennsylvania, and where the defendant has not pointed to any interest that Delaware would have in having its common law applied to benefit a non-Delaware corporation.

Furthermore, under the facts of this case, only the Commonwealth of Pennsylvania has any apparent interest in having its statutory bad-faith laws applied to the plaintiff's claims, as the claims were brought by a Pennsylvania citizen, who

12

was injured in an automobile accident occurring within the Commonwealth, and which is brought against an insurance company that is a citizen of Maryland. In a case like this one, where the conflict of laws is considered to be a false conflict, the Court should apply the law of the only interested state, which in this case we believe would be Pennsylvania. See Hammersmith, 480 F.3d at 229.

### B. True Conflict

In the alternative, however, even if a true conflict existed where both Delaware's and Pennsylvania's interests would be impaired by the application of the other's laws, Pennsylvania law should still apply in this particular case.

Where a true conflict exists, the court must examine which state has the greater interest in having its laws applied to the dispute. Id. at 231. In doing so, we begin by assessing each state's contacts with respect to the dispute. Id.; see also Hanover Ins. Co. v. Ryan, 619 F. Supp. 2d 127, 136 (E.D. Pa. 2007) (engaging in choice-of-law analysis with respect to bad-faith insurance claim).

In support of the argument that Delaware law should govern the claims in this case, GEICO notes the following: (1) the plaintiff was a resident of Delaware at the time of the accident; (2) the automobile insurance policy was first issued when the plaintiff was a resident of Delaware; (3) the plaintiff's vehicle was registered in Delaware; and (4) the plaintiff received the majority of her medical treatment from

13

providers in Delaware following the accident. In the defendants' words, it was "mere fortuity that the accident occurred in Pennsylvania." (Doc. 14, at 4.)

In addition to what we presume is a dispute over the characterization of this severe accident as "fortuitous",[1] the plaintiff has identified a number of additional contacts with Pennsylvania that she urges the Court to consider in finding that Pennsylvania law should apply to her bad-faith claim. As an initial matter, the plaintiff properly notes that the Third Circuit has predicted that the Pennsylvania Supreme Court would hold that a claim for UIM benefits accrues when the injured party's claim against the third-party tortfeasor settles or is resolved. See State Farm Mut. Automobile Ins. Co. v. Rosenthal, 484 F.3d 251, 257 (3d Cir. 2007); see also Hopkins v. Erie Ins. Co., 65 A.3d 452, 459 (Pa. Super. Ct. 2013) ("[W]e hold that the four-year statute of limitations on underinsured motorist claims begins to run when the insured settles with, or secures a judgment against, the underinsured owner or operator.").

In this case, the UIM action accrued on August 15, 2012, at which time the plaintiff was a resident of Alexandria, Pennsylvania. In addition, the plaintiff notes that the auto accident that forms the basis for this dispute occurred in Altoona,

---

[1] Fortuitous is defined a "occurring by chance, fortunate, lucky," Merriam-Webster Dictionary, a definition which seems ill-suited as a description of Ms. Davis' misfortune.

Pennsylvania, and involved a tortfeasor from Pennsylvania. Moreover, the plaintiff notes that the most significant medical treatment that she received following the accident occurred in Pennsylvania, and her UIM claim was initiated by the plaintiff's Pennsylvania counsel, and adjusted by a claims adjuster located in Virginia, while the plaintiff was a resident of Pennsylvania. Finally, the plaintiff notes that the defendants have asserted affirmative defenses in which the defendants seemingly agree that the auto accident was subject to the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law, and yet the defendants seek to avail themselves of select provisions of that law. (Doc. 19, at 4; see also Doc. 8, Answer, Fourth and Fifth Affirmative Defenses.)

Upon balance, we agree with the plaintiff that the contacts between Pennsylvania and the instant dispute over UIM benefits and GEICO's handling of her claims gives Pennsylvania a greater interest in the bad-faith claim than Delaware. Furthermore, we observe that "courts have accorded considerable weight to the state's ability to protect its insureds and their beneficiaries against the unreasonable denial of benefits." Hanover Ins. Co. v. Ryan, 619 F. Supp. 2d 127, 137 (E.D. Pa. 2007); see also General Star Nat. Ins. Co. v. Liberty Mut. Ins. Co., 960 F.2d 377, 379 (3d Cir. 1992) ("[T]he protection of insured parties is the primary public policy behind laws governing duties owed by an insurer to an insured"); Kilmer v. Connecticut Indem.

Co., 189 F. Supp. 2d 237, 246 (M.D. Pa. 2002) (applying Pennsylvania bad-faith law to insurance dispute).

In addition, although the parties do not address this issue, we note that in some cases it is entirely appropriate for a federal court sitting in diversity to conduct separate analyses to determine which state's law should apply to a bad-faith claim, where another state's law may arguably apply to a separate issue of contract interpretation. See Robeson Indus. Corp. v. Hartford Accident & Indem. Co., 178 F.3d 160, 168 (3d Cir. 1999) ("[C]onflict of laws principles do not require that all legal issues presented by a single case be decided under the law of a single state. Instead the choice of law decisions can and should be made on an issue-by-issue basis, and thus the law of different states can apply to different issues in the same case."). We believe this observation in Robeson has force in this case, where the defendants have moved only to dismiss the plaintiff's bad-faith claim in Count II of the complaint, where this particular claim did not accrue until the plaintiff became a Pennsylvania resident, and where the bad-faith claim arose out of a dispute with the plaintiff's insurance company that began in Pennsylvania.

The clear interest that Pennsylvania has in ensuring that one of its residents is treated fairly by an out-of-state insurance company, when considered alongside the fact that the bad-faith claim did not even accrue until the plaintiff had relocated to

Pennsylvania, provides further demonstration that Pennsylvania's contacts to the particular issue presented are greater than Delaware's. Indeed, we submit that Delaware's relevant contacts with and interest in the bad-faith claim in this case are minimal, and should not displace Pennsylvania's clear and ongoing interest in this matter.

Accordingly, for the reasons discussed above, we find that although there is an actual conflict between the laws of Pennsylvania and Delaware with respect to bad-faith insurance claims, we also find that this is a "false" conflict in this case because the defendants have not persuasively shown that Delaware's interests will be harmed if Pennsylvania's law is applied. Alternatively, even if the conflict-of-laws in this case is found to be a "true" conflict, Pennsylvania law should nevertheless still apply because Pennsylvania's contacts with and interest in the bad-faith claim at issue are manifestly greater than Delaware's.

## V.  **RECOMMENDATION**

Therefore, IT IS RECOMMENDED THAT the defendants' motion to dismiss (Doc. 13.) be DENIED, and that the Court find that Pennsylvania law should govern the plaintiff's bad-faith claim set forth in Count II of the complaint.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 27th day of June 2013.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge